WAYNESVILLE HOSPITAL COMPANY v. C. D. SUTPHEN and ALDEN HOWELL, JR.

(Filed 22 December, 1917.)

**Fraud—False Pretense—Corporations—Principal and Agent—Vendor and Purchaser—Secret Agreement.**

Where one actively secures subscribers to shares of stock in a corporation to conduct its business on a certain lot of land, representing that the lowest price for the property was a certain sum, and he has a secret agreement with the owner that he was to receive certain compensation for the sale, and upon the formation of the corporation by acceptance of the charter he has obtained, induces it to purchase the land at the price stated, it was his duty to have disclosed his secret agreement with the owner, and his misrepresentation of the lowest 'price obtainable was fraudulent and obtaining money by deceit and false pretense.

APPEAL by plaintiff from *Shaw, J.,* at September Term, 1917, of HAYWOOD.

*W. J. Hannah and Morgan & Ward for plaintiff.*
*M. Silver and R. W. Winston for defendant.*

CLARK, C. J. The complaint alleges, and there was evidence to support it, that the defendant Sutphen, who participated in organizing the plaintiff company, undertook to purchase for the company at the best

and lowest bid a house and lot known as "Bonnie Castle" from his co-defendant, Alden Howell, Jr., for use as a hospital, and that he reported to the company that such lowest bid was $9,300, and urged and procured its purchase at that price, whereas in truth and in fact he had an agreement "on the side" with his codefendant, the owner of the said property, by which Sutphen was to receive $400 for procuring the sale of the property to the company. There was also evidence that the company would not have accepted the bid had they known of this secret agreement.

The defendant admitted that he was the originator of the plan to organize the hospital company and procured most, if not all, of the members who joined the same and that on 27 November, 1916, he forwarded to the Secretary of State at Raleigh the charter which he had caused to be prepared but which was returned as imperfect, and he sent on a second copy, upon which the charter was issued 2 December. It was admitted that the company was organized on 8 December, 1916, by the stockholders accepting the charter at a called meeting and electing officers and directors and adopting by-laws. At that meeting the defendant Sutphen submitted the $9,300 offer from Alden Howell, Jr., who was also a member of the plaintiff company as well as Sutphen himself, and there is evidence that he represented this to be the best and lowest price at which the property could be bought and urged the stockholders to purchase it at that price, but he did not make known his secret agreement with the seller by which Sutphen was to receive $400 to induce the plaintiff to purchase at that price. The stockholders, at that meeting, agreed to purchase, and on 13 December took title at the price of $9,300, in ignorance of the secret agreement by which Sutphen was to receive $400 from said seller.

Sutphen admitted that on 29 November, while engaged in getting up the organization and two days after he had sent on an application for the charter to the Secretary of State, he had the secret agreement with Howell to get $400 "on the side" to secure the adoption of the purchase. But he asserts that he was not a "promoter," and therefore had a right to make this private agreement unknown to the associates whom he had induced to enter the company and who had entrusted him with securing the Bonnie Castle house and lot for the hospital. There was evidence for plaintiff by several witnesses in support of the allegation that Sutphen was the trusted agent of the corporators to secure such lowest offer for the company that was to be organized, though at that time it had not yet been legally "organized," and that if the stockholders had known at the time he reported and urged the bid of $9,300 that he was to make $400 for himself out of the sale, the company would not have accepted the offer.

The defendant Howell files an answer in which he admits that there was an agreement "on the side" between him and Sutphen whereby he was to give Sutphen $400 out of the purchase price of $9,300, provided that said Sutphen should induce the company to take the Bonnie Castle property at that price, which agreement was not known to the plaintiff till after it had purchased the property at that price and taken the deed, and that he would have sold the property to the company at $8,900 but for such agreement to pay Sutphen for making the trade; that he had paid Sutphen $300 of this bonus, and he offered to pay the remaining $100 into court, whereupon a nonsuit was ordered as to Howell.

· The agreement between Sutphen and Howell is in evidence and is as follows:

WAYNESVILLE, N. C., 29 November, 1916.

In the event of the sale of my property known as "Bonnie Castle" for hospital purposes and in view of the fact that Mr. Sutphen is the promoter of this movement for the establishment of a hospital for Waynesville, I hereby agree to pay him a commission of four hundred ($400) as a consideration for his efforts towards the selection and sale of the above property.                                    ANDREW HOWELL, JR.

Among the resolutions adopted after the company was organized, and at the time of the purchase, on his recommendation, of the property at $9,300, the following resolution was adopted, Sutphen being present: "Mr. Swift moved that in view of the valuable services rendered by Mr. C. D. Sutphen in the promotion of this corporation and his untiring efforts in its behalf, that he be recommended to the board of directors for the position of business agent, it being the sense of this meeting that his services in further promoting the interests of the hospital and keeping it in the eyes of the public would be of great value. Carried unanimously."

Notwithstanding the recital in the contract between Sutphen and Howell, and in the above resolution, that Sutphen was the "promoter" of the enterprise, his defense seems to be that he was not such and that when he made the contract on 29 November there had been only the preliminary meeting on 27 November, and that the real organization did not take place till afterwards, and therefore that he had a right to make this secret agreement and withhold knowledge thereof from the company when he urged and procured their acceptance and purchase of the property at $9,300 on the false representation that it was the best and lowest bid.

It is not material whether Sutphen was an agent or a promoter, nor that when he was entrusted by the meeting on 27 November with the

duty of getting the best and lowest offer the company was not then fully organized. He was acting as agent or promoter, if the evidence for the plaintiff is to be believed, and if he reported and urged the company after its organization to accept the offer of $9,300 as the best and lowest obtainable price, he was guilty of procuring $400 of the company's money by deceit and false pretense. There was clear allegation in the complaint to this effect and ample evidence to sustain it. Whatever evidence he could offer in rebuttal was matter for the jury, but he did not put on any evidence.

In the first ten verses of Chapter V of the Acts of the Apostles there was a transaction which bears a remarkable family resemblance to this case. The early disciples, in their effort to establish a system of owning property in common, agreed to sell all that they had and put the price into a common fund. One of them sold a possession but, keeping back a certain part of the price, laid the rest at the Apostles' feet and represented it to be the full sum received by him. His fraud was detected. And his wife, ignorant of the punishment that had befallen him, assenting to the same statement, suffered the same punishment. Peter, the chief of the Apostles, said to the offender that it was not necessary for him to bring the price of the possession into the common fund, but having done so, it was a fraud to represent the part which he brought in as the whole amount received.

The case is stronger against Sutphen, if the evidence for the plaintiff is to be believed, and it had a right to have that evidence submitted to the jury. By his own admission, he got up the company and procured the charter. There is evidence that he was entrusted with the duty of getting the lowest and best bid, and that later he represented to the company falsely, in violation of the trust and confidence reposed in him, that $9,300 was the best and lowest price at which "Bonnie Castle" could be bought for the proposed hospital, and procured the acceptance by the company of the property at that price by his recommendation. Whereas, in fact, $8,900 was the price the owner was willing to take, and Sutphen admits that he reserved for himself out of the purchase money $400, which was to go, not to the seller, but into his own pocket. That such transaction, if found to be true by the jury, is in breach of good faith and good morals and was in fact and in law obtaining money by deceit and false pretenses, can require no citation of authority.

It was the duty of Sutphen to make to his fellow stockholders at the time he recommended the purchase of the property a full and fair disclosure of his interest and of all the facts which the corporation ought to know before entering into the intended contract. 10 Cyc., 275, 276.

The evidence of the plaintiff shows that Sutphen was the "promoter" of the enterprise, which also appears by his written agreement with Howell and the resolution passed by the meeting at the time the prop-

erty was purchased on his recommendation. He admits that he took it upon himself to organize the plaintiffs into a corporation; to procure the necessary subscribers to the articles of incorporation; to see that the necessary documents were presented to the proper officers of the State to be recorded and to procure the necessary certificate of incorporation, and that he did generally what was necessary to "float the company." The same relation existed between the association and Sutphen when it was informally organized on 27 November as after it was legally organized, and the same good faith was required on his part towards his associates. The law requires of promoters of corporations that they make a full and fair disclosure to the corporation, when formed, of their interests, and it is a breach of trust for such promoter, who induces others to join in the enterprise, to purchase property at one valuation and then without making a full and fair disclosure to those whom he has induced to join the enterprise to sell such property to the company at a higher price, thereby taking to themselves a secret profit. 10 Cyc., 275 and notes; *Goodman v. White,* at this term.

The judgment of nonsuit and dissolving the order in arrest and bail is Reversed.